IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

THE UNITED STATES OF AMERICA,

Plaintiff,

vs. District Court Case Number 24-10014-15

KATIA NEVAREZ,

Defendant.

*****************************

THE UNITED STATES OF AMERICA,

Plaintiff,

vs. District Court Case Number 25-10031-1

CORNEL A. OWENS,

Defendant.

TRANSCRIPT OF PROCEEDINGS

On the 7th day of July, 2025 at 2:30 p.m. came on to be heard in the CHANGE OF PLEA HEARING in the above-entitled and numbered cause before the HONORABLE JOHN W. BROOMES, Judge of the United States District Court for the District of Kansas, Sitting in Wichita.

Proceedings recorded by mechanical stenography.
Transcript produced by computer.

APPEARANCES

The Plaintiff appeared by and through:
Mr. Matt Treaster
Mr. Lanny Welch
United States Attorney's Office
301 N. Main, Suite 1200
Wichita, Kansas 67202

The Defendant Katia Nevarez appeared in person, in custody and by and through:

Mr. Thomas Johnson
Petefish, Immel, Hird, Johnson & Leibold, LLP
842 Louisiana Street
Lawrence, KS 66044

The Defendant Cornel A. Owens appeared in person, in custody and by and through:

Mr. David Freund
Office of Federal Public Defender
850 Epic Center
301 N. Main
Wichita, KS 67202

(The following proceedings commenced at 2:30 p.m. and have been requested transcribed:)

THE COURT: Please be seated.

All right. We're here today to take changes of plea in two separate cases. I'm doing that because of some scheduling matters. So the only way I was going to get to this today was to do it this way. I have done it before, although not recently, so that's why we're doing it.

I think it will work out just fine but let me go ahead and I'll call the cases so I can get your appearances for the record, and then I'll explain a little bit more.

All right. First one is Case Number 24-10014, United States versus Katia Nevarez.

May I have appearances in that case, please.

MR. TREASTER: Good afternoon, Your Honor.

United States appears by Matt Treaster, Assistant United States Attorney.

MR. JOHNSON: Good afternoon, Your Honor.

Thomas Johnson on behalf of Katia Nevarez, who is also here in person.

THE COURT: Thank you.

And the other case is Case Number 25-10031, United States versus Cornel A. Owens.

May I have appearances in that case, please.

MR. WELCH: Your Honor, the United States appears by Lanny Welch, Assistant United States Attorney.

MR. FREUND: Good afternoon, Your Honor.

Cornel Owens appears in person and with counsel, David Freund, Assistant Federal Defender.

THE COURT: Thank you.

All right. The way I am going to do this, a lot of the stuff I have to talk to both of you about will be the same, so I'll go over your rights, I'll ask you a number of different questions, and then I'll have you respond.

Where the facts of your case or your plea documents differ, I'll talk to one of you, and then I'll talk to the other one. I'll try to make it clear to you when I'm doing that and to whom I'm speaking.

If you have any questions, get it confused at all, feel free to speak up, let me know, and we'll sort it all out.

I think the way that I will sequence it is when I'm speaking to both defendants at the same time, there will be a lot of questions where I will ask you something and the most frequent question will be, "Do you understand that?"

And that's where I will need an affirmative

response on the record that tells me you understand it. Or if you don't, what your question is.

We'll have Ms. Nevarez answer first, and then Mr. Owens.

So, Mr. Owens, you'll wait. Ms. Nevarez will say, yes, or I understand, and then you say what you have to say.

We'll keep it moving along that way.

Is everybody comfortable with that approach?

MR. WELCH: Yes, Your Honor.

MR. TREASTER: Yes, Your Honor.

MR. FREUND: Yes, Your Honor.

MR. JOHNSON: Yes, Your Honor.

THE COURT: Very well.

All right. Let me make sure, first of all, that both of you can speak English and understand what I'm talking about.

So, Ms. Nevarez, can you understand everything that is being said in the courtroom today?

DEFENDANT NEVAREZ: Yes. Yes.

THE COURT: And, Mr. Owens, can you understand what is being said in the courtroom today?

MR. OWENS: Yes, I do, Your Honor.

THE COURT: All right.

Does the money laundering involve any victims that

need notification?

MR. WELCH: No, Your Honor.

THE COURT: Okay.

All right. So my understanding is that we're here today to consider guilty pleas, and that each of you are prepared to sign written petitions to plead guilty pursuant to an agreement between you and the Government.

Is that correct?

MR. JOHNSON: Yes, Your Honor, that's correct.

THE COURT: She needs to answer.

DEFENDANT NEVAREZ: Yes, that's correct.

MR. OWENS: Yes, Your Honor.

THE COURT: All right. In order for your proposed guilty plea to be valid, you must first swear or affirm to answer all my questions truthfully. If you answer any of my questions falsely while under oath, or if any of the statements in your written plea petition are false, then those false statements could be used against you in a later prosecution for perjury, resulting in additional prison time.

Do you understand that?

DEFENDANT NEVAREZ: Yes, Your Honor.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Swear the defendants.

COURTROOM DEPUTY ROACH: Will both defendants

please stand and raise your right hand.

You do solemnly swear that the statements given in the Petition to Enter a Plea of Guilty herein are true and correct, and that any oral statements you make at this hearing are also true and correct, so help you God?

DEFENDANT OWENS: I do.

DEFENDANT NEVAREZ: Yes.

COURTROOM DEPUTY ROACH: Thank you.

DEFENDANT OWENS: Yes.

COURTROOM DEPUTY ROACH: Thank you.

THE COURT: All right. In the course of this hearing I'm going to ask some questions to make sure you're competent to make a very important legal decision such as pleading guilty.

I want to make sure you understand the charges against you; that your proposed guilty plea is being entered into knowingly and voluntarily; that it is not the result of any force or threats, nor the result of any promises, other than those specifically set forth in your plea agreement; and that your proposed guilty plea is supported by evidence the Government could present if your case went to trial.

Do each of you understand the purpose of this hearing?

DEFENDANT NEVAREZ: Yes.

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Do any of you have any questions about why we are here today?

DEFENDANT NEVAREZ: No.

DEFENDANT OWENS: No, Your Honor.

THE COURT: Okay. If I ask you a question and you don't hear me, or you don't understand what I am talking about, you need to let me know that so that I can repeat myself or clear it up for you.

And you're always free to talk privately with your lawyer before answering any of my questions.

Do you understand that?

DEFENDANT NEVAREZ: Yes.

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: All right. Starting with Ms. Nevarez, please state your full name, date of birth, and current age.

DEFENDANT NEVAREZ: What?

MR. JOHNSON: Could you repeat that, sir?

THE COURT: Yes.

Can you state your full name, date of birth, and current age.

DEFENDANT NEVAREZ: Katia Nayeli Nevarez, 6-1-97, 28.

THE COURT: How old are you?

DEFENDANT NEVAREZ: I'm 28.
THE COURT: Okay. Where were you born?
DEFENDANT NEVAREZ: Wichita, Kansas.
THE COURT: Are you a United States citizen?
DEFENDANT NEVAREZ: Yes.
THE COURT: How far did you go in school?
DEFENDANT NEVAREZ: Completed high school; graduated.
THE COURT: Okay. Can you read English?
DEFENDANT NEVAREZ: Yes.
THE COURT: Have you ever been treated for any mental illness, been confined to an institution or facility because of mental illness, or had any court determine you were mentally ill or incapacitated?
DEFENDANT NEVAREZ: No.
THE COURT: Have you consumed any alcoholic beverages, or taken any drugs, medicines, or pills of any kind in the last 48 hours?
DEFENDANT NEVAREZ: No.
THE COURT: Nothing?
DEFENDANT NEVAREZ: Nothing.
THE COURT: Your plea petition indicates you are taking some sort of pregnancy vitamins. Is that right?
DEFENDANT NEVAREZ: My prenatal vitamins.
THE COURT: So doesn't have any ability --

DEFENDANT NEVAREZ: No.

THE COURT: Any affect to think clearly and aid your lawyer in --

DEFENDANT NEVAREZ: No.

THE COURT: Are you able to think clearly today?

DEFENDANT NEVAREZ: Yes.

THE COURT: All right.

And, Mr. Owens, please state your name, date of birth, and current age.

DEFENDANT OWENS: Cornel Andre Owens, 4-4-77, 48.

THE COURT: Okay. Where were you born?

DEFENDANT OWENS: Chanute, Kansas.

THE COURT: Are you a United States citizen?

DEFENDANT OWENS: Yes, I am.

THE COURT: How far did you go in school?

DEFENDANT OWENS: Semester of college.

THE COURT: Can you read English?

DEFENDANT OWENS: Yes, sir.

THE COURT: Have you ever been treated for any mental illness, been confined to an institution or facility because of mental illness, or had any court determine you were mentally ill or incapacitated?

DEFENDANT OWENS: Yes, I have.

THE COURT: Tell me about that.

DEFENDANT OWENS: I take medication for a Bipolar II disorder, ADHD, the PTSD, and I got -- I don't know, just says major depressive disorder.

THE COURT: Okay. So you have been diagnosed with those conditions?

DEFENDANT OWENS: Yes, sir.

THE COURT: Ever been hospitalized for them?

DEFENDANT OWENS: Yes, sir.

THE COURT: Tell me about that.

DEFENDANT OWENS: When I was a juvenile I was sent to Topeka state mental hospital.

THE COURT: How long did you stay there?

DEFENDANT OWENS: Approximately 45 days, somewhere around there.

THE COURT: And that's it?

The rest of the time, all your adult life, you have not been hospitalized or placed in any sort of facility because of any of these conditions?

DEFENDANT OWENS: No, I haven't.

THE COURT: Anything about those conditions, alone or in combination, that affects your ability to understand what we're doing here, or to understand the seriousness of the charges against you, or interfere with your ability to assist your lawyer in preparing and presenting a defense?

DEFENDANT OWENS: No, it doesn't, Your Honor.

THE COURT: Okay.

What about have you consumed any alcoholic beverages, or taken any drugs, medicines, or pills of any kind in the last 48 hours?

DEFENDANT OWENS: Just for the disorders that I just named.

THE COURT: Okay. Is it -- you have a list of about seven medications in paragraph 21 of your plea petition. Is that -- are those the meds you're taking?

DEFENDANT OWENS: Yes, they are, Your Honor.

THE COURT: Are there any that aren't listed there?

DEFENDANT OWENS: No, there aren't.

THE COURT: Okay.

Anything about those medications, alone or in combination, that affects your ability to understand these proceedings or the seriousness of the charges, or interfere with your ability to help your lawyer prepare and present a defense?

DEFENDANT OWENS: No, it doesn't.

THE COURT: Are you able to think clearly today?

DEFENDANT OWENS: Yes, I am, Your Honor.

THE COURT: All right.

Do each of you have in front of you copies of your

plea agreement, your plea petition, and the charging documents under which you're pleading guilty?

And for Ms. Nevarez that will be the third superseding indictment.

And for Mr. Owens that's the indictment.

Do you all have all those documents in front of you?

DEFENDANT NEVAREZ: Yes, sir.

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: And have each of you signed your respective plea agreements?

Looks like Ms. Nevarez is signing hers right now.

Okay. Ms. Nevarez, have you signed your plea agreement?

DEFENDANT NEVAREZ: Yes, Your Honor.

THE COURT: And, Mr. Owens, have you signed yours?

MR. OWENS: Yes, Your Honor.

THE COURT: Okay. I am going to step through this part of the hearing with each of you individually, starting with you, Ms. Nevarez.

I'm going to go over the charges and the penalties, and I want to make sure that you understand all that and it's clear on the record who I'm speaking with.

So, Ms. Nevarez, according to paragraph 1 of your plea agreement, you're planning to plead guilty to Count 53 of the third superseding indictment which charges you with money laundering, is that correct?

DEFENDANT NEVAREZ: Yes, sir.

THE COURT: Okay. And if we look at the third superseding indictment and turn over to Count 53, it's actually a table with a bunch of different transactions listed, but beginning at the bottom of page 23 on that charging document it addresses Counts 50 through 82 together, and says that on or about the date specified below, in the District of Kansas and elsewhere, that you, Ms. Nevarez, knowing that property involved in specified financial transaction represented the proceeds of some form of unlawful activity, did unlawfully, knowingly, and intentionally conduct the financial transaction, which in fact involved the proceeds of specified unlawful activity, which was conspiracy to distribute a controlled substance, and distribution of a controlled substance, in violation of Title 21, United States Code Sections 841, and 846, knowing that the transaction was designed, in whole and in part, to conceal and disguise the nature, locations, source and ownership of the proceeds of the specified unlawful activity.

And, specifically, Count 53 charges that on August

3rd, 2023, you carried out such a transaction in the amount of $2,500. And that that amounts to a violation of Title 18, United States Code, Section 1956, subsection (a)(1)(B)(i), as well as Title 18, United States Code, Section 2.

Do you understand that that is the charge to which you are planning to plead guilty today?

DEFENDANT NEVAREZ: Yes, sir.

THE COURT: Okay. Have you had an opportunity to talk to your lawyer and get all your questions answered about all the elements of that offense that the Government would be required to prove to a jury beyond a reasonable doubt in order to obtain a conviction against you on Count 53 of the third superseding indictment if you decided to take your case to trial?

DEFENDANT NEVAREZ: Yes, sir.

THE COURT: And have you also had a chance to talk to your lawyer and get all your questions answered about any and all defenses to that charge that you could present to a jury if you decided to take your case to trial?

DEFENDANT NEVAREZ: Yes, sir.

THE COURT: Okay. If you're found guilty on Count 53 of the third superseding indictment the maximum punishment under the law would be a prison term of 20

years, fine of up to half a million dollars, or twice the value of the monetary instrument involved in this transaction, whichever is greater.

And so since you're only pleading guilty to the $2500 count, then that tells me that the maximum fine would be half a million dollars.

You'd also be subject to up to three years' supervised release when you got out of prison, and $100 mandatory special assessment, along with forfeiture.

Do you understand that?

DEFENDANT NEVAREZ: Yes, sir.

THE COURT: You also understand that if you were to violate the conditions of your supervised release following completion of any prison sentence, you could then be required to serve up to two more years in prison for any such violations, then you could be required to go back on supervised release once you got out?

DEFENDANT NEVAREZ: Yes, sir.

THE COURT: All right.

Mr. Johnson, I would like you to take a look at paragraph 10 of the plea petition. I think at least in the copy that I have there is a mistake on the term of supervised release.

You filled in three years, but you put it in the blank that says "at least three years" which would apply

to a drug conviction that has minimum terms of supervision.

But this offense I think doesn't -- doesn't fall under those minimum terms of supervised release and so the three years goes in the other blank which says "not to exceed 3 years."

MR. JOHNSON: Yes, Judge, I agree with that.

THE COURT: So why don't you pen and ink that with your client, strike the "three" from the first blank, move it to the blank on that same line further to the right, and then I think if you both initial it, that correction will be made.

MR. JOHNSON: Yes, sir.

THE COURT: Okay. Now, Ms. Nevarez, one of the penalties I mentioned earlier is forfeiture.

The third superseding indictment includes a forfeiture notice, and the parties have addressed that in paragraph 7 of your plea agreement which says that the defendant knowingly and voluntarily agrees and consents to imposition of a forfeiture judgment in the amount of $2500, which is equal to the amount of the value of the property involved in Count 53.

It says that you knowingly and voluntarily waive your right to a trial, including jury trial, regarding the forfeiture, and you also waive all challenges under

the law to the propriety of that forfeiture.

Is that correct?

DEFENDANT NEVAREZ: Yes, sir.

THE COURT: All right.

All right. Now I'm going to switch over and visit with Mr. Owens for a minute.

All right, Mr. Owens, do you have copies of your plea agreement, plea petition, and the indictment filed at Docket Entry 1 in your case in front of you?

DEFENDANT OWENS: Yes, I do, Your Honor.

THE COURT: And have you signed your plea agreement?

DEFENDANT OWENS: Yes, I have.

THE COURT: According to paragraph 1 of the plea agreement, you're planning to plead guilty to Count 2 of the indictment which charges you with possession of a firearm in furtherance of a drug trafficking crime.

Is that right?

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Okay. And if I look at Count 2 of the indictment it charges, more specifically, that on or about December 30th, 2024, that you knowingly possessed a firearm in furtherance of a drug trafficking crime for which you may be prosecuted in federal court, specifically, possession of methamphetamine with intent

to distribute, as charged in Count 1 of the indictment.

And that that offense amounts to a violation of Title 18, United States Code, Section 924(c)(1)(A).

Do you understand that that is the charge to which you are planning to plead guilty today?

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Have you had an opportunity to talk to your lawyer and get all your questions answered about all of the elements of that offense that the Government would be required to prove to a jury beyond a reasonable doubt in order to obtain a conviction against you on Count 2 of the indictment in your case if you decided to take your case to trial?

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Have you also had a chance to talk to your lawyer and get all your questions answered about any and all defenses to that charge that you could present if you decided to take your case to trial?

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: If you're found guilty on Count 2 of the indictment in your case, the maximum punishment would be a prison term of at least five years and up to life in prison, a $250,000 fine, up to five years' supervised release when you got out of prison, and a $100 mandatory special assessment.

Do you understand that?

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Do you also understand that if you were to violate the conditions of your supervised release following completion of any prison sentence, you could then be required to serve up to five more years in prison for any such violations, and then you could be required to go back on supervised release once you got out?

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Because you've got a statutory minimum involved in this case you are not eligible for probation. Do you understand that?

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Okay. Your indictment also includes a forfeiture notice. The parties are addressing that in paragraph 10 of your plea agreement, which says that defendant agrees and consents to the forfeiture and abandonment of the following property of the United States, And it lists a Taurus 9mm pistol, Serial Number J054176, and ammunition.

It says you agree that that property was involved in the commission of the offenses charged in the indictment. You knowingly and voluntarily waive your right to a jury trial regarding that forfeiture, and you waive all challenges to the propriety of that forfeiture

under the law.

Do you understand and agree with all that?

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Okay.

MR. FREUND: Could I have a brief moment to speak with Mr. Welch, Your Honor?

THE COURT: Sure.

[Sotto voce discussion had.]

MR. FREUND: Thank you, Your Honor.

THE COURT: Yes, sir.

All right. Now once again, speaking -- addressing both of the defendants here, do each of you understand that if you were to test positive for the use of illegal controlled substances more than three times during the course of any one-year period while on supervised release, the court would revoke your supervised release and send you back to prison?

DEFENDANT NEVAREZ: I'm sorry, can you repeat that?

THE COURT: Yep.

Each of you understand that if you were to test positive for the use of illegal controlled substances more than three times during the course of any one-year period while on supervised release, or on probation, then the Court would revoke your supervised release or your

probation, as applicable, and send you back to prison.

DEFENDANT NEVAREZ: Yes, Your Honor.

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Okay.

Have each of you been able -- had enough time to talk to your lawyer and discuss the criminal charges against you, and your proposed guilty plea, and also to carefully review everything in the indictment, any superseding indictments in your case, specifically with you, Ms. Nevarez, including the third superseding indictment, along with your plea petition, and your plea agreement?

DEFENDANT NEVAREZ: Yes, Your Honor.

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Were all the documents I just mentioned read by you, or at least read to you word for word?

DEFENDANT NEVAREZ: Yes, sir.

MR. FREUND: Yes, Your Honor.

THE COURT: Have you and your lawyer also had time to review and discuss all the documents or other evidence produced by the Government in connection with your case?

DEFENDANT NEVAREZ: Yes, Your Honor.

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Have you and your lawyer discussed in detail all the various advantages and disadvantages of pleading guilty today instead of going to trial later?

DEFENDANT NEVAREZ: Yes, Your Honor.

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Do each of you understand that you may refuse to enter into any plea agreement with the Government and, instead, insist on taking your case to trial?

DEFENDANT NEVAREZ: Yes, Your Honor.

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Are you completely satisfied with your lawyer's legal advice and representation?

DEFENDANT NEVAREZ: Yes, Your Honor.

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: All right. Instead of pleading guilty under your plea agreement, each of you have the right to persist in your prior plea of not guilty, in which event you're guaranteed certain valuable rights under the United States Constitution. These include the right to a speedy, public trial by a jury of 12 persons randomly selected from the community, and the right to the assistance of a lawyer at that trial and at all stages of the proceedings, including any appeals.

If you took your case to trial you would have the

right to see and hear all witnesses called by the Government to testify against you. Your lawyer would be permitted to ask questions of all those witnesses, and you'd have the right to call your own witnesses.

You'd have the right to use the subpoena power of the Court to force the production of physical evidence and the attendance of witnesses here in the courtroom.

You'd have the right to testify on your own behalf, but you'd also have the right to remain silent and not be forced by the Government to testify and possibly incriminate yourself.

If you remain silent, the jury would be instructed it could draw no inference of guilt based on your silence.

At trial your innocence would be presumed until such time, if ever, as the Government came forth with sufficient evidence to prove to the satisfaction of the jury and the trial judge that you were guilty beyond a reasonable doubt, which is a very high standard of proof. You would have no burden or obligation to prove your innocence at trial.

But by entering a plea of guilty, you'd be giving up these very valuable constitutional rights, you'd be admitting all the allegations against you in the relevant counts of your charging documents, which is Count 53 of

the third superseding indictment for you, Ms. Nevarez, and Count 2 of your indictment, Mr. Owens and, therefore, you would be -- there would be no trial of any kind by a judge or a jury.

Do you understand all that?

DEFENDANT NEVAREZ: Yes, sir.

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Okay. And each of you understand that while we're doing this plea here together, if you wanted to plead not guilty, or persist in your prior plea of not guilty, and you decided to take your case to a jury trial, your trials would be completely separate and apart from the other defendant here in the courtroom; we are only doing this for the plea.

If you wanted to go to trial we wouldn't be combining these cases, or as far as I know, any other cases.

Do you understand that?

DEFENDANT NEVAREZ: Yes, sir.

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Okay. And I guess I should be clear with you, Ms. Nevarez.

You have multiple defendants in your case so it is -- I don't want to mislead you. For the defendants in your case who want a trial, those may very well be tried

in one trial together, I don't know. We'll cross that bridge when we get to it.

But just to be clear, I wouldn't be combining your case and Mr. Owens' case.

Does that make sense?

DEFENDANT NEVAREZ: Yes, sir.

THE COURT: Okay. All right. In paragraph 5 of each of your plea agreements the Government agrees to make certain sentencing recommendations to the Court.

But as pointed out in paragraph 6 of Ms. Nevarez's plea agreement, and in paragraph 7 of Mr. Owens' plea agreement, those are merely suggestions.

So if I decide not to go along with what the Government recommends, and I don't go along with what you recommend, and if I were to impose a sentence that is longer or less favorable to you than what anyone else suggests to me, then as set forth in paragraph 9 of Ms. Nevarez's plea agreement, and in paragraph 8 of Mr. Owens' plea agreements, you would not be permitted to withdraw your guilty plea.

Do you understand that?

DEFENDANT NEVAREZ: Yes, sir.

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Okay. In paragraph 3 of each of your plea agreements you acknowledge that the Court will

use the United States Sentencing Guidelines in helping to determine an appropriate sentence, so I'm going to explain to you a little bit about the sentencing guidelines.

But I would also tell you, Mr. Owens, that based on your count of conviction, I think unless I -- there's something about this that I don't know about, for a conviction under 18 U.S. Code Section 924(c), I think the sentencing guidelines were just going to recommend the statutory minimum, that is what they always do, and they leave it up to the Court as to whether I'm going to go along with that or something else, and I know the parties have addressed that in some sentencing recommendations that I'll get to shortly.

But, generally speaking, the way the sentencing guidelines work is -- is this. They're based on two things: The seriousness of the offense, and the defendant's criminal history, if any.

Generally speaking, the more serious the offense and the more extensive the defendant's criminal history, the defendant's prison sentence under the guidelines gets longer.

Not so much in your case, Mr. Owens, because of what I just explained to you, but that is how it works generally.

And that's how it works in your case, Ms. Nevarez.

But both of you should know that, in any event, the sentencing guidelines are not binding on the Court, they're advisory, which means I will consider them but I'm not required to sentence you within the range or the specific duration recommended by the sentencing guidelines.

Have each of you discussed with your lawyer the application of the sentencing guidelines to your case, including the various factors, if any, that could increase or reduce the length of your sentence under the sentencing guidelines?

DEFENDANT NEVAREZ: Yes, Your Honor.

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: In addition to the guideline range or length, the Court will consider a number of other things in fashioning an appropriate sentence, including the statutory sentencing factors at 18 U.S. Code, Section 3553(a).

Those statutory sentencing factors include the nature and history of your crime, and your own history and characteristics; how to reflect the seriousness of your offense; promote respect for the law, and provide just punishment for your crime; discouraging further criminal conduct by others; protecting the public from

further crimes by you; providing you with effective correctional treatment; and avoiding unwarranted sentencing disparities.

Have each of you discussed with your lawyer the statutory sentencing factors that I just described to you and how those might apply to your case?

DEFENDANT NEVAREZ: Yes, Your Honor.

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Although your lawyer has estimated the likely range of your sentence based on his professional judgment and experience, neither your lawyer nor anyone else can say for certain what the guideline impact is going to be on your case until after the presentence investigation has been completed and the Court's resolved any disputed issues.

So just to be clear, do each of you understand that the maximum sentence I mentioned earlier still could apply, despite your lawyer's estimates, and despite the terms of your plea agreement?

DEFENDANT NEVAREZ: Yes, Your Honor.

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: As pointed out in paragraphs 3 and 4 of your plea agreement, at sentencing the Court may consider any evidence concerning your background, character, and conduct, provided it's reliable, even

though it may not be proved beyond a reasonable doubt.

And in determining what guideline applies and what sentence to impose inside or outside the resulting guideline range, the Court may take into account all relevant criminal conduct, including counts to which you did not plead guilty or were never even charged with and, thus, have not been convicted.

All these factors, separately or together, could have a major effect upward or downward on the length of the sentence you ultimately receive.

Therefore, there is no absolute guarantee today that you will receive any benefit in terms of sentence from pleading guilty.

Do you understand that?

DEFENDANT NEVAREZ: Yes, sir.

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Criminal defendant who is convicted at trial, in addition to having the right to file an appeal, may under some circumstances attack the conviction or sentence in a separate legal proceeding known as a collateral attack.

But do you understand as explained in -- let's see, this is paragraph 11 of Ms. Nevarez's plea agreement, and in paragraph 11, also, of Mr. Owens' plea agreement, you're generally giving up your right to

challenge this prosecution, your conviction, or your sentence in this case, whether by direct appeal or by collateral attack?

Except that, Ms. Nevarez, you've reserved the right to appeal if the Court sentences you above the sentencing guideline range applicable to your case.

And Mr. Owens has reserved his right to appeal if the Court imposes a sentence higher than the jointly recommended sentence that the parties are going to put forth.

Do you all understand that?

DEFENDANT NEVAREZ: Yes, sir.

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Okay. All right. Let me go through the remaining things in these plea agreements with you.

All right, Ms. Nevarez, in paragraph 5 of your plea agreement, in exchange for your guilty plea, the Government agrees to dismiss the remaining counts of the third superseding indictment at the time of sentencing; to not file any additional charges against you arising out of the facts forming the basis for the third superseding indictment in your case; to recommend you receive a two-level reduction in offense level for acceptance of responsibility; and if your offense level is 16 or higher prior to any such reduction, then the

Government will also ask for an additional one-level reduction for timely notification of intent to plead guilty.

And the Government agrees to jointly recommend with you a downward departure and/or a variance, in which case the parties agree to recommend a sentence of one-year probation, which is a nonbinding recommendation.

So it -- even if I don't go along with it, that doesn't serve as a basis for appeal. Does that make -- do you understand all that?

Does that make sense to you?

DEFENDANT NEVAREZ: Yes, Your Honor.

THE COURT: Okay. I'm going to go ahead and go over this with Mr. Owens because the next part of that paragraph 5 I can address with you jointly.

Mr. Owens, paragraph 5 of your plea agreement says in exchange for your guilty plea the Government agrees to not file any additional charges against you arising out of the facts forming the basis for the present indictment; if applicable they're going to make the same recommendation about offense level reduction for acceptance of responsibility and timely notification of intent to plead guilty, although I don't think with a 924(c) charge that an offense level is going to be calculated or determined, but to the extent somehow it

is, Government agrees to do that; Government agrees to dismiss the remaining counts of the indictment at sentencing; and to join with you in requesting a sentence of 10 years in BOP custody.

Government also agrees to request that you receive a sentence of time served on your revocation matter in Case Number 19-10143-01-JWB.

Parties understand that these agreements are only binding as between themselves, and they don't bind the Court.

Do you understand all that?

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: All right. As to both of you, I want to make clear that following those first four-lettered subparagraphs under 5, the rest of paragraph 5 explains how the Government can get out of its obligations under the plea agreement.

And it basically says that if the Government proves that you violated the plea agreement, or that you willfully obstructed or impeded the administration of justice, or that you've engaged in additional criminal conduct, then I can let the Government out of its obligations under paragraph 5 of the plea agreement, which -- and that will allow the Government to pursue you for higher penalties, additional charges, or both.

Do both of you understand that?

DEFENDANT NEVAREZ: Yes.

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Okay. Now, with respect to Ms. Nevarez, does -- was she charged in any of the other indictments? Because you're only agreeing to dismiss the remaining counts of the third superseding indictment as to her.

MR. WELCH: She was not, Your Honor.

THE COURT: Okay.

And then I see that in Mr. Owens' plea agreement, paragraph 6 appears to repeat paragraph 5d about the joint recommendation for a 10-year custody sentence and concurrent sentence on the revocation matter.

Is there anything in paragraph 6 that's not the same as what I read to him from 5d?

MR. WELCH: No, Your Honor.

THE COURT: Okay.

All right. Ms. Nevarez, if you look at your plea agreement, paragraph 8 has a lengthy list of obligations and restrictions that you're agreeing to, and it is related to your financial penalties in this case, mostly that $2500 forfeiture judgment.

And I'm not going to read these to you in detail but, basically, this restricts your ability to dispose of

property, establish or open new lines of credit, requires you to help identify for the Government if you have any money, or property, or resources that would help satisfy your financial obligations incurred in this case.

And, like I say, I'm not going to reread all of these to you but my question is have you had an opportunity to go over all of paragraph 8 from your plea agreement with your attorney and get all your questions answered?

DEFENDANT NEVAREZ: Yes, sir.

THE COURT: Okay. All right. Does the written plea agreement that each of you signed contain all the promises and understandings between you and the Government?

DEFENDANT NEVAREZ: Yes, sir.

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Are there any side deals or oral agreements between you and the Government that are not set forth in your written plea agreement?

DEFENDANT NEVAREZ: Can you repeat that? I'm sorry.

THE COURT: Yep.

Are there any side deals or oral agreements between you and the Government that are not set forth in your written plea agreement?

DEFENDANT NEVAREZ: No.

DEFENDANT OWENS: No, Your Honor.

THE COURT: Okay. There can be a lot of bad consequences from pleading guilty other than just the conviction and the sentence you receive in this case, and I'm just going to go over a few of these with you.

First of all, if you're convicted of another crime in the future, your sentence in that case could be made longer as a result of your conviction in this case because this conviction will become part of your criminal history.

Do you understand that?

DEFENDANT NEVAREZ: Yes, sir.

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: If you were on probation, parole, or supervised release in connection with another criminal case when you committed the offense in this case, then as a result of pleading guilty today, your release in any such other case could be revoked and you could be required to serve prison time in that case that would be in addition to any sentence imposed in this case.

Do you all understand that?

DEFENDANT NEVAREZ: Yes, Your Honor.

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: And if your guilty plea is accepted

it could result in your being deprived of valuable civil rights as a citizen, such as the right to vote, hold public office, serve on a jury, and possess any kind of firearm.

Do you understand that?

DEFENDANT NEVAREZ: Yes, Your Honor.

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Okay. And last thing before I get to the prosecutor here, Ms. Nevarez, I see that the parties are talking about a probation sentence in this case.

As I explained to you, I'm not obliged to go along with that. I don't know what your guideline range is going to be but what I do want you to understand is that if you do end up with a sentence of probation in this case, then under the law, if you go out and violate your conditions of supervised probation, and I decide to revoke your probation because of that, then I get to resentence you just as if I were sentencing you for the first time.

And the current state of the law, as I understand it, is that I would sentence you to an appropriate sentence based on everything that had been properly established and brought to my attention at the time of your original sentencing, and then the Court of Appeals

tells me to look at the things you did to violate your probation, and basically squander the opportunity that you were given, and figure out how much more of a sentence to give you for that.

And then I think technically speaking I can run those -- basically treat those concurrent or consecutive, although, ultimately, it's one sentence. But the bottom line is that as the Court of Appeals has currently explained this to me, you can end up with a longer sentence if you squander your probation because of taking into account your violation conduct after you got probation to start with.

Do you understand that?

DEFENDANT NEVAREZ: Yes, Your Honor.

THE COURT: Okay. All right.

Starting with Ms. Nevarez's case, I am going to ask the prosecutor to summarize what the evidence would be if this case went to trial and represent that the Government could establish guilt beyond a reasonable doubt on all of the essential elements for Ms. Nevarez, Count 53 of the third superseding indictment.

MR. TREASTER: Your Honor, if this case were to go to trial the Government would prove to the jury that the co-defendant, Uriel Talavera, was involved in the distribution of illegal narcotics and money laundering.

Talavera would receive information from associates in Mexico who would tell him where the drug proceed money should be wired. Talavera would then communicate with Katia Nevarez and provide her with the names of money recipients in Mexico.

Nevarez would then go to a money service business in the District of Kansas, such as Western Union, and make multiple money transfers to multiple people.

For example, on or about August 3rd, 2023, Nevarez sent $2500 to a recipient in Mexico with the initials M.A.S., per Talavera's instructions.

The money Nevarez sent to Mexico were the proceeds of a specified unlawful activity, the illegal distribution of controlled substances.

Nevarez's money transfers to Mexico on behalf of Talavera allowed him to conceal the nature, source, and ownership of the drug trafficking proceeds.

In total Nevarez sent over $72,414.50 to Mexico over the course of multiple transactions via wire transmissions.

THE COURT: Thank you.

Mr. Johnson, do you agree with the factual recitation, and that it would establish all of the essential elements of Count 53 of the third superseding indictment in Ms. Nevarez's case?

MR. JOHNSON: Yes, Your Honor.

THE COURT: Ms. Nevarez, is everything the prosecutor just said here in court about the facts of your case true?

DEFENDANT NEVAREZ: Yes, sir.

THE COURT: And is everything stated in paragraph numbered 2 of your plea agreement regarding the factual basis for your guilty plea true?

DEFENDANT NEVAREZ: Yes, sir.

THE COURT: Although you have received legal advice from your lawyer, is the final decision to plead guilty yours and yours alone?

DEFENDANT NEVAREZ: Yes, Your Honor.

THE COURT: Has your lawyer ever stated or implied to you in any way that you must plead guilty instead of taking your case to trial?

DEFENDANT NEVAREZ: Yes. Yes, sir.

THE COURT: Listen to my question. Pay attention.

Has your lawyer ever stated or implied to you in any way that you must plead guilty instead of taking your case to trial?

DEFENDANT NEVAREZ: No, sir.

THE COURT: Okay.

Has your lawyer made it clear to you that if you

wanted to go to trial, he would do his best to defend the case on your behalf?

DEFENDANT NEVAREZ: Yes, sir.

THE COURT: Has anyone forced or threatened you in any way to get you to plead guilty?

DEFENDANT NEVAREZ: No, sir.

THE COURT: Are you entering this plea of guilty freely and voluntarily, and because you believe you're guilty as charged?

DEFENDANT NEVAREZ: Yes, sir.

THE COURT: Mr. Johnson, you believe your client's competent to plead guilty and that she should be permitted to do so?

MR. JOHNSON: Yes, Your Honor, I believe she is competent.

THE COURT: All right. Ms. Nevarez, do you have any questions for me or your lawyer about this case before I have you enter your plea?

DEFENDANT NEVAREZ: No, sir.

THE COURT: Very well.

Have Ms. Nevarez sign her plea petition here in open court, and deliver that document, along with her fully executed plea agreement, to my courtroom deputy.

While they're working on that, I would ask Mr. Welch, would you summarize what the evidence would be

if Mr. Owens' case went to trial, and represent that the Government could establish guilt beyond a reasonable doubt on all the essential elements of Count 2 of the indictment in Mr. Owens' case.

MR. WELCH: Your Honor, if this matter were to go to trial, the Government would prove beyond a reasonable doubt that on December 30th of 2024, law enforcement officers in Montgomery County, Kansas, observed Cornel A. Owens, the defendant, driving a blue Nissan Sentra in Independence, Kansas.

The officers were aware the defendant's Kansas driver's license was suspended, so they attempted to stop the vehicle. Owens did not stop in response to the officers activating their emergency equipment, and Owens then led multiple officers on a lengthy car chase, which ended in the county, after Owens crashed the vehicle into a metal gate.

The officers removed Owens from the vehicle and placed him under arrest.

In his right, front pants pocket they found a loaded Taurus 9mm semiautomatic pistol.

On the driver's floorboard of the Nissan Sentra they located glass jars containing multiple baggies of methamphetamine, which appeared to be packaged for sale. The total weight of the methamphetamine was more than

nine ounces.

If the defendant had not been arrested on December 30th of 2024, he had intended to distribute at least a portion of the methamphetamine he was transporting. And he possessed the Taurus 9mm handgun, in part, to further that drug trafficking crime.

Your Honor, I have a pretrial hearing with Judge Melgren at 3:30.

Mr. Treaster has agreed to cover me for the remaining of the hearing, with the Court's permission.

THE COURT: Yes, you go ahead.

MR. WELCH: Thank you, Your Honor.

Mr. Freund, do you agree with the factual recitation and that it would establish all of the essential elements of Count 2 of the indictment in Mr. Owens' case?

MR. FREUND: Yes, Your Honor.

THE COURT: Mr. Owens, is everything the prosecutor just said here in court about the facts of your case true?

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: And is everything stated in paragraph numbered 2 of your plea agreement regarding the factual basis for your guilty plea true?

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Although you have received legal advice from your lawyer, is the final decision to plead guilty yours and yours alone?

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Has your lawyer ever stated or implied to you in any way that you must plead guilty instead of taking your case to trial?

DEFENDANT OWENS: No, Your Honor.

THE COURT: Has your lawyer made it clear to you that if you wanted to go to trial he would do his best to defend the case on your behalf?

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Has anyone forced or threatened you in any way to get you to plead guilty?

DEFENDANT OWENS: No, Your Honor.

THE COURT: Are you entering this plea of guilty freely and voluntarily, and because you believe you are guilty as charged?

DEFENDANT OWENS: Yes, Your Honor.

THE COURT: Mr. Freund, do you believe your client is competent to plead guilty and that he should be permitted to do so?

MR. FREUND: Yes, Your Honor.

THE COURT: Thank you.

All right. Mr. Owens, do you have any questions

for me or your lawyer about your case before I have you enter your plea?

DEFENDANT OWENS: No, I do not, Your Honor.

THE COURT: Very well. Have the defendant, Mr. Owens, sign the written plea petition in open court and deliver that document, along with his fully executed plea agreement, to my courtroom deputy.

If that stuff is ready on Ms. Nevarez, I'll take it.

MR. FREUND: May I approach, Your Honor?

THE COURT: Yes, sir.

All right. Ms. Nevarez, I'll have you rise to enter your plea.

Can you stand?

Did I see -- okay, I'm sorry. For a moment I thought I saw a wheelchair or something over there. Never mind.

All right. Katia Nevarez, with regard to the charge against you in Count 53 of the third superseding indictment, how do you now plead:

Guilty or not guilty?

DEFENDANT NEVAREZ: Guilty.

THE COURT: I find the defendant's fully competent and capable of entering a plea of guilty; that the defendant understands the charge; that the

defendant's plea of guilty is being made freely, voluntarily, and because is he guilty as charged; that the defendant's guilty plea is not the result of inadvertence, fear, or coercion, and that it is made with full understanding of the consequences; that the defendant's guilty plea is not the result of any promises, except those specifically set forth in the plea agreement; and that there exists a factual basis for the plea as relates to each essential element of the offense.

Therefore, I accept the defendant's guilty plea.

I'll defer my decision on whether to accept the plea agreement until after I've reviewed the presentence report.

If I sentence the defendant, the parties may assume that I have accepted the plea agreement.

I'll order that a presentence investigation be performed.

Sentencing set for Monday, September 22nd, 2025 at 2:30 p.m.

Now I'll have you all sit down.

I'll discuss bond with you here in a moment.

Let's look at Mr. Owens here.

Mr. Owens will rise to enter his plea.

Cornel A. Owens, with regard to the charge against you in Count 2 of the indictment, how do you now plead:

Guilty or not guilty?

DEFENDANT OWENS: Guilty, Your Honor.

THE COURT: I find the defendant's fully competent and capable of entering a plea of guilty; that the defendant understands the charge; that the defendant's plea of guilty is being made freely, voluntarily, and because he is guilty as charged; that the defendant's guilty plea is not the result of ignorance, fear, inadvertence or coercion, and that it is made with full understanding of the consequences; that the defendant's guilty plea is not result of any promises, except those specifically set forth in the plea agreement; and that there exists a factual basis as relates to each essential element of the offense.

Therefore, I accept the defendant's guilty plea.

I'll defer my decision on whether to accept the plea agreement until after I reviewed the presentence report.

If I sentence the defendant, the parties may assume I have accepted the plea agreement.

I'll order that a presentence investigation be performed.

Sentencing set for Monday, September 22nd, 2025, 9:30 a.m.

Defendant Owens is remanded to the custody of the

United States Marshals pending sentencing.

You all can take him if you would like.

I'm going to discuss detention or bond with Ms. Nevarez.

What's the Government's position?

MR. WELCH: Your Honor, we do not oppose continued bond. We are not aware of any violations that she has had of her bond. She has been cooperative with the Government throughout this case so we would encourage the Court to continue her on her bond.

Thank you.

THE COURT: Ms. Johnson.

Mr Johnson, if --

MR. JOHNSON: Sorry. We would ask the Court to continue her on bond. We concur with the Government's statements. Ms. Nevarez is also pregnant and expecting her baby within two weeks.

THE COURT: Okay. She hasn't had any -- any bond violations?

MR. JOHNSON: No, sir.

THE COURT: Okay. You say she is due in two weeks?

MR. JOHNSON: I think -- what date?

DEFENDANT NEVAREZ: The 20th.

MR. JOHNSON: 20th, Judge.

THE COURT: All right. Makes sense to let you have that baby without being in the jail, but understand this:

I can consider anything about you at sentencing. You're asking me to consider a sentence of probation in a case that involves substantial drug trafficking. You obviously weren't, as far as I can tell, any sort of kingpin, but you're involved in a case that you moved a lot of money supporting a drug trafficking organization so giving you probation may be a reach, I don't know.

I haven't read your presentence report. All I can speak to right here, right now, is the activity of the group as a whole and I see that facts indicate you moved a lot of money for them.

So my point is that if you do well, continue to do well on bond, that helps you because I can consider anything about you at sentencing. But if you go out and violate your bond, get in trouble, squander the opportunity that I am affording you here, because the law assumes that you'll go to jail at this point unless certain criteria are met, but because I can consider anything about you at sentencing, that means if you go out and get in trouble, I can consider that, too.

And that's not going to run in your favor when it comes to me deciding whether or not probation is

appropriate.

Do you understand that?

DEFENDANT NEVAREZ: Yes, Your Honor.

THE COURT: All right. She is continued on bond. Same conditions as before.

Anything else?

MR. WELCH: No, Your Honor, thank you.

MR. JOHNSON: No, Your Honor, thank you.

THE COURT: You got anything?

MR. FREUND: No, sir.

THE COURT: Court's in recess.

(Proceedings conclude at 3:27 p.m.)

*************************************

C E R T I F I C A T E

I, Jana L. McKinney, United States Court Reporter in and for the District of Kansas, do hereby certify:

That the above and foregoing proceedings were taken by me at said time and place in stenotype;

That thereafter said proceedings were transcribed under my discretion and supervision by means of transcription, and that the above and foregoing constitutes a full, true and correct transcript of requested proceedings;

That I am a disinterested person to the said

action.

IN WITNESS WHEREOF, I hereto set my hand on this, the 29th day of October, 2025.

s/ Jana L. McKinney
Jana L. McKinney, RPR, CRR, CRC, RMR
United States Court Reporter

I N D E X

PAGE

REPORTER'S CERTIFICATE 51