IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

THE UNITED STATES OF AMERICA,

Plaintiff,

vs.

SANTIAGO RODRIGUEZ,

Defendant.

District Court
Case Number
24-10014-16

TRANSCRIPT OF PROCEEDINGS

On the 29th day of October, 2025 at 2:30 p.m. came on to be heard in the SENTENCING HEARING in the above-entitled and numbered cause before the HONORABLE JOHN W. BROOMES, Judge of the United States District Court for the District of Kansas, Sitting in Wichita.

Proceedings recorded by mechanical stenography.
Transcript produced by computer.

APPEARANCES

The Plaintiff appeared by and through:
Ms. Molly Gordon
United States Attorney's Office
301 N. Main, Suite 1200
Wichita, Kansas 67202

The Defendant appeared in person, by and through:
Mr. Nicholas David
The David Law Office
123 W. 8th, Suite 100
Lawrence, KS 66044

(The following proceedings commenced at 2:30 p.m. and have been requested transcribed:)

THE COURT: Please be seated.

This is Case Number 24-10014-16, United States versus Santiago Rodriguez.

May I have appearances, please.

MS. GORDON: Good afternoon, Your Honor.

Molly Gordon on behalf of the United States.

MR. DAVID: Good afternoon. May it please the Court.

Mr. Rodriguez appears in person, and by Nicholas David.

THE COURT: Thank you.

Mr. Rodriguez, can you understand everything that is being said in the courtroom?

THE DEFENDANT: Yes, Your Honor.

THE COURT: This matter comes on for sentencing. Anything we need to take up before we proceed to sentencing?

MS. GORDON: No, Your Honor. Thank you.

MR. DAVID: Nothing for Mr. Rodriguez, Your Honor.

THE COURT: Swear the defendant.

[Oath given.]

THE COURT: Are you Santiago Rodriguez?

THE DEFENDANT: Yes.

THE COURT: How old are you?

THE DEFENDANT: Yes, Your Honor, 24 years old.

THE COURT: On August 7th, 2025, you pled guilty to two counts of money laundering, in violation of 18 U.S. Code, Section 1956.

At the end of that hearing I ordered preparation of a presentence report. I have that report in front of me now filed at Docket Entry 373 in this case.

It includes an addendum, indicating no objections by either party.

I have reviewed the presentence report, along with the defendant's sentencing memorandum filed at Docket Entry 378.

Have the parties had an opportunity to review these materials, and are there any corrections or objections to the presentence report?

MS. GORDON: Thank you, Your Honor.

The Government has reviewed the materials. There are no corrections or objections.

THE COURT: Thank you.

MR. DAVID: No corrections or objections from the defense, Your Honor.

THE COURT: Mr. Rodriguez, have you had an opportunity to review the presentence report and go over

it with your counsel?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you satisfied with his representation?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Since there are no objections, I make the following tentative findings based on the presentence report:

Total Offense Level is 15, Criminal History Category is II, gives the following statutory constraints on sentencing:

Custody up to 20 years on each count, for a total statutory maximum of 40 years; supervised release, three years on each count, concurrent; probation one to five years, each count concurrent; fine half a million dollars for each count, for a total of a million dollars; special assessment $100 per count, for a total of $200.

Under the advisory sentencing guidelines it calls for custody of 21 to 27 months, followed by supervised release one to three years per count.

Not eligible for probation;

Fine 7500 to $75,000;

Special assessment $100 per count.

Now I'll hear arguments on sentencing, starting with the Government.

MS. GORDON: Thank you, Your Honor.

Pursuant to the plea agreement the Government is -- in the plea agreement the Government is allowed to ask for a low end and the defendant can seek a variance.

In reviewing this, Your Honor, the Government will join in a variance from the guidelines. I believe defense will ask for a probationary term, or if there is a custodial sentence given, 12 months and a day.

The Government is asking for 12 months and a day, Your Honor. The reason for that is looking at the age of the defendant, he's quite young, his lack of significant criminal history and, quite frankly, the fact that he's done so well on bond; he hasn't had any violations.

He tested positive for marijuana just out of the gate, which had happened prior to him being on bond but since he has been on bond -- since January, so almost, you know, nine, ten months, he hasn't had any violations.

It is my understanding he has a job, that he's doing that sort of thing, and so that's actually something that the Government is pleased to hear and happy to hear and I think that that should be acknowledged.

Also, in looking at his conduct and what he has done, and then the other people who were sentenced for money laundering, he certainly is not at the level of

Katia, who this Court sentenced, but he is I think a little more culpable than the other money launderer who had, I believe, three years' probation.

I believe Ms. Nevarez -- I'll have to check on that actually, Your Honor, if you'll give me a moment. She may have actually gotten a year and a day.

THE COURT: She got a year and a day --

MS. GORDON: Right.

THE COURT: -- because this was the second time she was stupid enough to --

MS. GORDON: Correct.

THE COURT: -- go along with helping her idiot boyfriend commit crimes.

And Garcia --

MS. GORDON: Correct.

THE COURT: -- got probation because he presented with a very convincing rehabilitation picture.

MS. GORDON: Correct, Your Honor.

THE COURT: He was working, he was doing -- he had everything in line.

MS. GORDON: Right.

THE COURT: So that's why the other two money launderers got what they got.

MS. GORDON: Right.

THE COURT: This man, I still haven't made up my

mind yet.

I am not convinced that he is as much of a model of rehabilitative effort as Garcia was.

MS. GORDON: Right.

THE COURT: We'll see what comes out in the hearing.

MS. GORDON: Well, Your Honor, I think he certainly falls -- he's certainly not as culpable as Ms. Nevarez, and for the reasons the Court stated and the amount that she was involved with is significantly more than his, so as I'm standing here now, I'm going to change my mind as I'm standing here and I'm not quite sure what the appropriate sentence is. But she got 12 months and a day, I'm not sure he is at the same level as her.

I also don't think he is at the same level as the other money launderer.

I start getting a little nervous when we mess with the custodial sentence because as the Court knows, 12 months and a day means something within the terms of Bureau of Prisons and what that means for reduction, so I think he falls somewhere between those two and the Court -- and the Government's position, he should be somewhere between those two in terms of his culpability, but also in terms of the good job that he's done.

And, like I said, I understand that he has a job now. He is doing the things that we want him to be doing.

I don't mean to have an esoteric discussion about the criminal justice system but it is somewhat difficult sometimes when someone has been out on bond, they're doing what they are supposed to be doing, they're following the laws, they have this huge family supporting them, and they have a job and they're contributing to society and doing all those things, it begs a bigger question sometimes of can -- you know, what happens with incarceration then? Does that start him back over at zero when he is really doing what we want him to be doing.

He has a felony conviction. That's a significant thing. We certainly don't think a guideline sentence is appropriate, but perhaps some time. But, again, I'm very pleased to hear how well he has been doing.

I think this is a hard case, Your Honor. I'm sorry I'm not providing more clear direction from the Government but I'm also interested in hearing his presentation.

But those are -- that's kind of where I am. And, like I said, these cases are difficult, it's -- you know, to struggle with in terms of the appropriate remedy.

I guess sometimes what I like to think in a case like this where someone has been doing a good job and is doing well, there's always the situation where if they return to the life of crime and they start committing that stuff, they have several consequences:

You know, one, their criminal history is going to be higher;

Two, they'll see that they were given a chance before that was squandered, and you know supervised release issue, in addition to any new charges so, I mean, there is certainly a hammer at the end of new criminal conduct but, you know, the other side of it is, of course, this was a wire case, this was significant amount of drugs in the community, it was a big deal, and to be laundering the money back to Mexico is certainly a big deal.

But because he is quite young, because he has done so well on bond, it is my understanding he is currently employed and has that job, it makes it kind of difficult to know exactly what to do with him.

But all that is to say the Government does believe he is somewhere between the other two money launderers that the Court is well familiar with and we do not think a guideline sentence is necessarily warranted in this case, Your Honor.

Thank you.

THE COURT: Thank you.

MR. DAVID: Thank you, Your Honor.

As outlined in our sentencing memorandum, Mr. Rodriguez is asking for one of two alternatives:

The first alternative is he is asking for a noncustodial sentence, the period of which we would leave to the Court's discretion;

Or if the Court determines that the conduct in this case is just too serious, we're asking for a variance to a year and one day of incarceration.

And as the Court is aware, Mr. Rodriguez, he is a young man, he's 24 years old. And he has had really a very tragic upbringing where he got addicted to drugs at a very young age and, unfortunately, that addiction is what led him to the offense conduct in this case.

And Mr. Rodriguez isn't making any excuses for the decisions that he made. He knows what he did was wrong. He know what ge did was illegal. Although, what Mr. Rodriguez has done is everything that he can since being charged in this case to really turn his life around.

And as the Court is aware, when Mr. Rodriguez was released on bond he was -- he took advantage of that release. He decided to go attend drug treatment at

Seventh Direction here in Wichita. He has been able to maintain sobriety throughout that time.

While there certainly could have been a little bit better insight on the part of Mr. Rodriguez as to his sobriety, he has been able to maintain that.

He has lawful employment. He has the support -- extensive family support, as shown by all of his family members that are here today to support him, as well as a young daughter that he needs to support.

We are asking the Court to give him the chance with a noncustodial sentence.

Really Mr. Rodriguez's only significant brush with the law was that possession of cocaine conviction that he had from state court, but I think that Mr. Rodriguez has gotten the message from this case about the seriousness of his conduct.

He wishes to address the Court as well, but we're asking the Court to give him a chance, considering his performance on bond where he has done all the things that we want someone to do, such as obtain full-time employment, going to rehab, getting clean, supporting his family, and we think that that is worthy of another chance.

And, of course, if Mr. Rodriguez goes down the wrong path, of course any type of probation could at some

point be revoked and Mr. Rodriguez would be looking at serving time in prison at that point.

THE COURT: Okay.

Who else wants to speak for him?

THE DEFENDANT: I would like to say something, Your Honor.

THE COURT: Not you. You have all these people out here. I want to hear from them first.

MR. DAVID: Judge, may I have a moment?

Two individuals had indicated they wanted to speak.

THE COURT: Yes.

MR. DAVID: Your Honor, Mr. Rodriguez's mother, Martha would like to address the Court.

THE COURT: Okay. Have her come up.

MS. CAMPA: Hello. I'm Martha Campa, I'm Santiago's mom.

THE COURT: Yes, ma'am.

MS. CAMPA: Santiago has paid his dues and, you know, he's changed a lot.

He's done everything -- you know, he had a troubled past and we've had a lot going on in our family and, you know, out of everything that's happened, you know, he's remained strong and he's helped us -- helps out with his siblings and his nieces, his nephew.

He's a good dad.

Sorry.

He's really matured a lot. He's coming a long way. I'm very proud of, you know, everything that he has overcome and I know that he will continue to keep going walking the straight line.

I'm sorry.

Just, please, you know, please give him a chance. I know he'll -- he'll be good.

THE COURT: Okay. Thank you.

MR. DAVID: Judge, I think there is one more person that would like to speak.

THE COURT: All right.

MS. RODRIGUEZ: Hello. I'm Mariana Rodriguez, I am his oldest sister.

Me and my brother, we've been living with each other for almost three years and I've seen him grow a lot. A lot. Grown a lot, matured a lot. Takes care of his responsibilities.

He's not a follower, he is a leader. He does what he does. You know, he's not out here trying to go do what the next person is trying to do. He's just trying to take care of his family and his daughter.

He works hard, you know. He loves all of us. He has a really big heart.

I'm not making excuses for what he's done but I know that this has definitely opened his eyes and has made him grow.

And he -- we did not come from a good family at all but I don't want him to be judged, you know, off of that.

I think what Santiago -- it's more emotional for me is because he is one of my younger brothers and it's just something that he just kind of got involved in, you know, growing up with all of us but it's just not -- it's not who he is. He is a good man. He has a good heart and he's a good worker and I know he's -- he's good in his community.

He is a good person and he gets along with everybody, so I think if you give him another chance, I know he would show you and he would do really good and, you know, prove himself and be able to show you that, you know, in the letters and, you know, all that that we had sent in that he is a good person. He does deserve another chance.

I don't think -- I think probation would be fair. I don't think prison is something for my brother Santiago. I don't think that's him. That's not his -- I just think he's too big and I don't think he deserves to go into that.

That's it.

Thank you.

THE COURT: Thank you.

Who else?

MS. SALAS: My name is Thalia. I share the four-year-old daughter with Santiago.

My reasoning as to why I feel like he should not get the sentencing today, we share a four-year-old daughter. Santiago is my village. I don't really come from a very big village so having to explain to my daughter that her daddy is gone and won't be home soon is heartbreaking to me and her.

My daughter suffers from severe anxiety and she is a very emotional little girl and Santiago helps me a lot with having to take her to school sometimes while I'm at work. He helps me a lot with taking care of her. Whenever I need anything, he's quick to be on his feet to get anything for her.

So I don't really want to explain to my daughter as to why her dad is gone so I just, I beg that you just allow him to be out here just for her.

THE COURT: Okay.

MS. SALAS: Thank you.

THE COURT: Thank you.

Who else?

MR. DAVID: Judge, that's all.

Thank you.

THE COURT: All right.

Mr. Rodriguez, it's your turn.

THE DEFENDANT: Thank you, Your Honor.

First and foremost, I would like to thank my family and my friends for coming here to support me.

And I would also like to apologize to my family and the Court for the decisions I have made. And I have made a mistake in my life and I am ashamed of. I can say it has been a life changing experience and I wouldn't want to do it again.

I know I have to change. I no longer want any part of this because it has only hurt the ones I love, especially my five-year-old daughter who I hurt.

Without me, until I come home she -- she will have to grow up without me -- me until I come home.

I am deeply sorry and I hope I can be forgiven and I want the Court and you, Your Honor, to know I take full accountability and responsibility for my wrongdoings.

With that I pray to God that this Court and you, Your Honor, to have mercy on me.

And thank you, Your Honor, for this opportunity to express how I truly feel.

THE COURT: Thank you.

According to the presentence report here, starting at the bottom of page 18, you were arrested back in January of this year related to this offense and at that time you had been using the following drugs, right around the time or slightly before you got arrested:

What do we have? Alcohol, marijuana, cocaine, lean, mushrooms, and you had prior experiences with other drugs.

What's been your experience since then?

THE DEFENDANT: Since I stopped using drugs?

THE COURT: Have you managed to completely stop using since you were arrested?

THE DEFENDANT: Yes, Your Honor.

THE COURT: How did you do that?

THE DEFENDANT: Just staying focussed, taking care of my daughter, staying busy working.

THE COURT: Now what sort of treatment have you been in since then?

THE DEFENDANT: I was in Seventh Direction drug treatment.

THE COURT: How long did you do that?

THE DEFENDANT: I want to say about four months.

THE COURT: This was outpatient?

THE DEFENDANT: Yeah, yes.

THE COURT: This year?

THE DEFENDANT: Yes.

THE COURT: Haven't had any relapses?

THE DEFENDANT: No, Your Honor.

THE COURT: How do you feel today?

THE DEFENDANT: I'm feeling good today, Your Honor.

THE COURT: Not thinking about going back?

THE DEFENDANT: No.

THE COURT: The Court's required under 18 U.S. Code, Section 3553(a), to impose a sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing identified in that statute.

In determining a particular sentence to be imposed the Court has considered the United States Sentencing Guidelines, the plea agreement, statements of the parties, presentence report, and everything we've discussed here today.

After reviewing the presentence report, the Court finds the sentencing guideline range of 21 to 27 months is correctly calculated, based on a Total Offense Level of 15, and a Criminal History Category of 2.

This offense involves the defendant from at least January '22 through August 2023 laundering close to $10,000 in drug proceeds for co-defendant Euriel Talavera, by conducting money transfers to people in

Mexico.

One of the things I have to think about here is just punishment for what a person's done. And I look not only at your own conduct, but your role in the bigger picture.

This was a substantial drug trafficking organization. They were moving lots and lots of fentanyl, methamphetamine, other drugs into our community, and you were helping them accomplish that by getting the money back out to people in Mexico.

There's -- you would have difficulty believing how often this room is set up just this way with people sitting where you're sitting whose lives have been destroyed by the drug trade. They come in here and I've got -- just like this -- family members, not always this many, but brothers, sisters, wives, children, parents, grandparents all hurting, all scared because their loved one is facing a prison sentence.

And most the time the people come through here are addicts themselves. They get hooked on this stuff. They're drug addicts so they can't hold down a job, so they help distribute the stuff, help you get it dealt and sold, and all that so they can make enough money to support their own drug habit, keep some food on the table, keep the lights on.

This sound familiar?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Over and over this happens.

These people come in here and many of them, they get to sentencing, and this is the first time they've been sober in a long time because this usually takes a few months, and they're sitting in the jail, many of them, until now, and they kind of dry out, get the drugs out of their systems, and they come in here and all of a sudden I see people who have hopes and dreams and promise but it's been squandered, because the drugs have stolen it from them.

And so you were part of that; doing tremendous harm to this community, hurting the people that are dealing and going to jail because they're addicts, and hurting all the family members that show up here day after day because they're losing -- they've lost -- they've already lost their loved one to addiction, and they've lost their own hopes and dreams because they get sucked into that world as a consequence of being in the family circle of someone who's an addict and that takes its toll on them. And then they end up in this place wondering how they got here. Over and over.

So that's a big deal. Do not diminish the significance of what you have been involved in by

thinking, well, I was just sending a few thousand dollars back to Mexico. You helped make this happen.

So that's important.

Nevertheless, I think every one of those people that comes through here, that their life has value. Every one of them is worthy of redemption. Not every one of them is ready.

My job is to see that justice is done, while also trying to find the mere handful who might be ready to change the trajectory of their life because we're all going to be a lot better off if we can find a way to break the repetitive cycle of getting people ground up in the criminal justice system and, instead, get them on a path to being law abiding citizens who lead a quiet, peaceful life, enjoy family, help those around them, help one way or another make the world around them a little bit better place.

I look at you, you're young. You don't have much criminal history. I don't think there is a lot of dispute about this.

Here's what I am going to tell you, what I see is critical here:

You're caught up in a generational curse.

I have read the presentence report. I know about your father, Vicente Rodriguez. I have got his old case,

and I've got his new case and the presentence report chronicles his long history of convictions in not small matters, either: Involuntary manslaughter; aggravated escape from custody; possession of drugs with intent to distribute, a host of things. Now he has new charges for possession of cocaine with intent to distribute. We'll see where that goes. So you have got that.

But it gets worse: Your mom was addicted to methamphetamine at a critical time in your life so you lost her support.

Somewhere along the way, Aron Campa came into your life. According to the presentence report, he's a co-defendant in this case charged with conspiracy to distribute methamphetamine.

So I have got -- I don't know what you call him, stepdad, or whatever he is, got him, too. Now I've got you. So you know what I'm talking about.

You were cursed by being brought up with a father and a stepdad, both of whom are embroiled in drugs and criminal activity; your mom struggling with addiction. Now here you are.

And you have a daughter. Somebody has got to put a stop to this generational curse. And the task has fallen to you. If you don't put a stop to it, then what do you think is likely to happen to your daughter?

If she continues to grow up in a world where her family, some of the family members, clearly, friends, associates, people she is around, are full of drugs and crime, what is she going to do? Look to you if you are just going to keep doing it?

The greatest hypocrite detector in the world is someone's own child. They can smell hypocrisy from a mile away. If you don't put a stop to it, you have no moral authority to try to avoid it.

So for your own child, maybe your grandchildren, whoever comes after you, somebody has got to put a stop to this. And as of today, that task has fallen to you.

Are you going to do it?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you sure?

THE DEFENDANT: Yes.

THE COURT: Okay. Then what I am going to do -- well, we can talk about it this way.

If I send you to prison today -- and I don't know what that would be, you've got a guideline range of two years, plus or minus three months. The Government's suggesting a year and a day, your lawyer suggests a year and a day, I don't know where I will end up on that.

I have learned not to draw too many hard lines on that because the Court of Appeals doesn't have any sense

of humor about it and sometimes I have gotten stuck with that.

Let's say for the reasons stated here thus far I think it's serious, and there's no guarantee that I am going to go along with a year and a day; could be higher than that.

But if I gave you that, then you got out, squandered all of it, you're looking at two years maximum on a revocation sentence for each of the two counts, so I guess four years max. And then, eventually, you get off supervision.

But if I give you probation and you squander that, I can give you up to 40 years. That's a long time.

If I give you probation, even -- I mean, the parties have both basically kind of made the case that you're somewhere between Garcia and the female money launderer that got a year and a day. So Garcia got three years, so I mean we're looking at more like five years if I gave you probation.

So five years, you get out there and get back on drugs or do something stupid and squander this, it doesn't matter whether they prosecute you for any new crimes, I can bring you back here and wring you up and I've got 40 years to play with.

And under the current sentencing rules from the

Court of Appeals, at a minimum, I would give you a composite sentence that is composed of a new sentence on this offense, taking into account the way things stand today, plus an additional sanction of some amount of time for squandering your probation opportunity.

So whatever it is, it's more than you would get today. And sometimes it can be a lot more.

I have done that once before and a guy went from probation to seven years.

So, anyway, that's kind of what I have got to play with. And so I guess my question to you is, are you committed enough to changing the trajectory of your life that you are willing to accept the risk of a sentence that could be up as high as 40 years for squandering your probation, or do you feel like the smarter thing to do, because you know what you're dealing with on the inside, and the outside, is to take something more manageable and get it over with and reduce the risk associated with violating your supervised release when you get out?

What do you think?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Well, that doesn't tell me -- it's one or the other. You've kind of got to pick.

"Yes" doesn't tell me anything.

THE DEFENDANT: Yes, I would like probation,

Your Honor.

THE COURT: You think you're up for that risk?

THE DEFENDANT: Yes.

THE COURT: You are so committed to this that you're going to take that risk on, is that right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. David, you're shaking your head no there.

Is there something you want to interject?

MR. DAVID: No, Judge, not at all.

I think that Mr. Rodriguez just initially didn't understand your question.

I didn't mean to make any suggestion or any sort of gesture.

THE COURT: Okay. All right then. Forewarned is forearmed.

I'm going to give you five years' probation, supervised probation on each count, to run concurrently. I think that covers the factors -- sentencing factors.

I'm going to order $100 to the Crime Victims Fund.

I'm not going to impose a fine.

We have a personal money judgment already on file for over $2600 as outlined in the preliminary order of forfeiture filed by the Court August 15th, 2025.

I'm going to impose the mandatory, standard, and

special conditions of supervision set forth in Part D of the presentence report.

The defendant facilitated laundering of drug proceeds by his co-defendant, so a condition restricting his contact with co-defendants will afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant.

Nature of the offense and history outlined in the presentence report warrant the condition for participation in a cognitive behavioral program.

He has a history of poor decisionmaking and failing to take responsibility for his actions so participation in a cognitive behavioral program, which may include moral reconation therapy, will assist in changing his thinking patterns and address protection of the public from further crimes of the defendant, as well as provide him with needed correctional treatment.

The condition allowing searches of his person and property is appropriate to assist in verifying his compliance with conditions of supervision, it will ensure adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant.

Defendant has a long history of abusing marijuana and other substances. His participation in a substance abuse treatment program, with abstention from alcohol

during supervision, will assist the defendant in refraining from the use of illegal substances during the term of supervision, and provide him with needed medical care.

It is a noncustodial sentence. Voluntary surrender is not an issue.

Any objections?

MS. GORDON: Your Honor, just that I believe he pled to two counts so it should be $200 for a special assessment.

THE COURT: You're right; $200.

MR. DAVID: No objection.

THE COURT: All right. I want to make sure one thing, though.

His co-defendant is his -- is Aron Campa.

My understanding is there is no familial -- biological or legal familial relationship there. So I think the Circuit sometimes requires findings of conditions that impinge on constitutionally protected familial relations as saying, basically, I considered that, and I think it's appropriate even given that encroachment, but he's not really family, I don't think that's the case here, so if you want to say something to that effect, let's hear it. Otherwise, I'm not going to make any other finding.

I am asking your lawyer.

THE DEFENDANT: No, Your Honor.

THE COURT: It is his opportunity.

MR. DAVID: My client has indicated he has no reason to have any contact with Mr. Campa, so we have no objection to a no contact order.

THE COURT: All right. Defendant will rise for imposition of sentence.

Court determines that the presentence report and previously stated findings are accurate and orders those findings incorporated in the following sentence:

Pursuant to the Sentencing Reform Act of 1984 it is the judgment of the Court that the defendant, Santiago Rodriguez, is hereby sentenced to a term of five years' supervised probation on each of Counts 83 and 84. Said terms running concurrently.

Within 72 hours he is to report to U.S. Probation Office in the district in which he is released.

While on supervised probation he is to comply with the mandatory and standard conditions adopted by this Court, and the special conditions of supervision as set forth in Part D of the presentence report.

It is ordered the defendant shall pay the United States a special assessment of $100 to the Crime Victims Fund on each of Counts 83 and 84, for a total of $200.

Payment of the assessment is due immediately.

Imposition of a fine is waived.

Preliminary order of forfeiture is made final as to this defendant and shall be incorporated in the judgment.

Both the Government and defendant are advised as to their respective rights to appeal this sentence and conviction.

An appeal taken from this sentence is subject to 18 U.S. Code, Section 3742. And subject to any waiver in the plea agreement.

The defendant is advised it is your right to appeal the conviction and sentence, but only to the extent you have not waived that right in the plea agreement.

You also can lose your right to appeal if you do not timely file a notice of appeal in the District Court.

Rule 4(b) of the Federal Rules of Appellate Procedure gives you 14 days after entry of judgment to file a notice of appeal.

If you so request, the Clerk of Court shall immediately prepare and file a Notice of Appeal on your behalf.

If you're unable to pay the costs of an appeal, you have the right to apply for leave to appeal in forma

pauperis.

Does the Government have a motion on remaining counts?

MS. GORDON: Yes, Your Honor. The Government moves to dismiss the remaining counts as to this defendant.

THE COURT: Motion is granted.

Anything else?

MS. GORDON: No, Your Honor. Thank you.

MR. DAVID: Nothing from Mr. Rodriguez, Your Honor.

THE COURT: Thank you.

Court's in recess.

(Proceedings conclude at 3:15 p.m.)

*************************************

C E R T I F I C A T E

I, Jana L. McKinney, United States Court Reporter in and for the District of Kansas, do hereby certify:

That the above and foregoing proceedings were taken by me at said time and place in stenotype;

That thereafter said proceedings were transcribed under my discretion and supervision by means of transcription, and that the above and foregoing constitutes a full, true and correct transcript of

requested proceedings;

That I am a disinterested person to the said action.

IN WITNESS WHEREOF, I hereto set my hand on this, the 28th day of May, 2026.

s/ Jana L. McKinney
Jana L. McKinney, RPR, CRR, CRC, RMR
United States Court Reporter

I N D E X

| | PAGE |
|---|---|
| REPORTER'S CERTIFICATE | 32 |